UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN MCDANIELS,<br><br>        Plaintiff,<br><br>        v.<br><br>DIAMONDBACK ENERGY, INC., TRAVIS D. STICE, VINCENT K. BROOKS, DAVID L. HOUSTON, REBECCA A. KLEIN, STEPHANIE K. MAINS, MARK L. PLAUMANN, MELANIE M. TRENT, FRANK D. TSURU, and STEVEN E. WEST,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John McDaniels ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Diamondback Energy, Inc. ("Diamondback" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed combination of the Company with Endeavor Energy Resources, L.P. ("Endeavor LP") and its parent entity Endeavor Parent, LLC ("Endeavor").[1]

2. On February 11, 2024, Diamondback, Diamondback's wholly owned

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

subsidiaries Eclipse Merger Sub I, LLC ("Merger Sub I") and Eclipse Merger Sub II, LLC ("Merger Sub II"), Endeavor Manager, LLC (the "Company Representative") (solely for purposes of certain sections set forth therein), and Endeavor entered into an Agreement and Plan of Merger (as amended on March 18, 2024, the "Merger Agreement"). The Merger Agreement provides that Diamondback will acquire all of the equity interests in Endeavor in exchange for (a) cash consideration of $8.0 billion, subject to adjustments according to the terms of the Merger Agreement; and (b) 117,267,069 shares of Diamondback common stock.[2]

3. The Company's corporate directors subsequently authorized the March 29, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.[3] The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[4]

---

[2] The Company's stockholders will own approximately 60.5% of the combined company once the Proposed Transaction has closed.

[3] The Merger Agreement requires the Company to issue additional shares of its common stock (the "Share Issuance"). Nasdaq listing rules require the Company to secure stockholder approval before issuing twenty percent or more of its outstanding common stock and before issuing securities that will result in a "change of control" of the company. The Proposed Transaction is therefore also contingent upon Diamondback stockholders voting to approve the proposed Share Issuance.

[4] The Special Meeting at which stockholders are asked to approve Proposed Transaction

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Diamondback common stock.

10. Defendant Diamondback is a Delaware corporation with its principal executive offices located at 500 West Texas Ave, Suite 100, Midland, Texas 79701. Diamondback's

---

currently is scheduled for April 26, 2024.

shares trade on the Nasdaq Global Select Market under the ticker symbol "FANG." Founded in 2007, Diamondback is an independent oil and natural gas company that acquires, develops, explores, and exploits unconventional, onshore oil and natural gas reserves in the Permian Basin in West Texas. Diamondback focuses on the development of the Spraberry and Wolfcamp formations of the Midland Basin and the Wolfcamp and Bone Spring formations of the Delaware Basin, which are part of the Permian Basin in West Texas and New Mexico. The Company also owns and operates midstream infrastructure assets in the Midland and Delaware Basins of the Permian Basin.

11. Defendant Travis D. Stice is and has been Chairman of the Board, Chief Executive Officer, and a director of the Company at all times relevant hereto.

12. Defendant Vincent K. Brooks is and has been a director of the Company at all times relevant hereto.

13. Defendant David L. Houston is and has been a director of the Company at all times relevant hereto.

14. Defendant Rebecca A. Klein is and has been a director of the Company at all times relevant hereto.

15. Defendant Stephanie K. Mains is and has been a director of the Company at all times relevant hereto.

16. Defendant Mark L. Plaumann is and has been a director of the Company at all times relevant hereto.

17. Defendant Melanie M. Trent has been Lead Independent Director of the Company at all times relevant hereto.

18. Defendant Frank D. Tsuru is and has been a director of the Company at all times

relevant hereto.

19.     Defendant Steven E. West is and has been a director of the Company at all times relevant hereto.

20.     Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21.     On February 12, 2024, the Company announced in relevant part:

MIDLAND, Texas, Feb. 12, 2024 (GLOBE NEWSWIRE) -- Diamondback Energy, Inc. (NASDAQ: FANG) ("Diamondback" or the "Company") and Endeavor Energy Resources, L.P. ("Endeavor"), today announced that they have entered into a definitive merger agreement under which Diamondback and Endeavor will merge in a transaction valued at approximately $26 billion, inclusive of Endeavor's net debt.  The combination will create a premier Permian independent operator.

The transaction consideration will consist of approximately 117.3 million shares of Diamondback common stock and $8 billion of cash, subject to customary adjustments.  The cash portion of the consideration is expected to be funded through a combination of cash on hand, borrowings under the Company's credit facility and/or proceeds from term loans and senior notes offerings.  As result of the transaction, the Company's existing stockholders are expected to own approximately 60.5% of the combined company and Endeavor's equity holders are expected to own approximately 39.5% of the combined company.

The transaction was unanimously approved by the Board of Directors of the Company and has all necessary Endeavor approvals.

"This is a combination of two strong, established companies merging to create a 'must own' North American independent oil company.  The combined company's inventory will have industry-leading depth and quality that will be converted into cash flow with the industry's lowest cost structure, creating a differentiated value proposition for our stockholders," stated Travis Stice, Chairman and Chief Executive Officer of Diamondback.  "This combination meets all the required criteria for a successful combination: sound industrial logic with tangible synergies, improved combined capital allocation and

significant near and long-term financial accretion. With this combination, Diamondback not only gets bigger, it gets better."

Mr. Stice continued, "Over the past forty-five years, Mr. Stephens and his team at Endeavor have built the highest quality private oil company in the United States. Our companies share a similar culture and operating philosophy and are headquartered across the street from one another, which should allow for a seamless integration of our two teams. As a result, we look forward to continuing to deliver best-in-class results with a combined employee base headquartered in Midland, assuring Midland's relevance in the global oil market for the next generation."

"I am grateful to the Endeavor team and proud of what we have built since 1979," said Autry C. Stephens, Founder and Chairman of the Board of Endeavor. "We believe Diamondback is the right partner for Endeavor, our employees, families and communities. Together we will create value for shareholders and our other stakeholders."

"As we look toward the future, we are confident joining with Diamondback is a transformational opportunity for us," said Lance Robertson, President and Chief Executive Officer of Endeavor. "Our success up to this point is attributable to the dedication and hard work of Endeavor employees, and today's announcement is recognition by Diamondback of the significant efforts from our team over the past seven years, driving production growth, improving safety performance and building a more sustainable company. We look forward to working together to scale our combined business, unlock value for all of our stakeholders and ensure our new company is positioned for long-term success as we build the premier Permian-focused company in Midland."

**Strategic and Financial Benefits**

- Combined pro forma scale of approximately 838,000 net acres and 816 MBOE/d of net production
- Best in-class inventory depth and quality with approximately 6,100 pro forma locations with break evens at <$40 WTI
- Annual synergies of $550 million representing over $3.0 billion in NPV10 over the next decade
  - Capital and operating cost synergies: approximately $325 million
  - Capital allocation and land synergies: approximately $150 million
  - Financial and corporate cost synergies: approximately $75 million
- Substantial near and long-term financial accretion with ~10% free cash flow per share accretion expected in 2025
- Stock-weighted transaction solidifies investment grade balance sheet
- Advances leading ESG profile

"This combination offers significant, tangible synergies that will accrue to the pro forma stockholder base," stated Travis Stice.  "Diamondback has proven itself to be a premier low-cost operator in the Permian Basin over the last twelve years, and this combination allows us to bring this cost structure to a larger asset and allocate capital to a stronger pro forma inventory position.  We expect both teams will learn from each other and implement best practices to improve combined capital efficiency for years to come."

**2024 Diamondback Stand-alone Guidance and Base Dividend Increase**

In conjunction with this announcement, Diamondback is releasing selected operating information for the fourth quarter of 2023 and providing initial production and capital guidance for 2024.  Diamondback today also announced that the Company's Board of Directors will approve a 7% increase to its base dividend to $3.60 per share annually ($0.90 per share quarterly), effective for the fourth quarter of 2023.

- Average fourth quarter 2023 production of 273.1 MBO/d (462.6 MBOE/d)
- Fourth quarter 2023 cash capital expenditures of $649 million
- On a stand-alone basis in 2024 Diamondback expects to generate oil production of 270 – 275 MBO/d (458 – 466 MBOE/d) with a total capital budget of approximately $2.3 - $2.55 billion
- Beginning in the first quarter of 2024, Diamondback will reduce its return of capital commitment to at least 50% of free cash flow to stockholders from at least 75% of free cash flow previously

"Diamondback today released fourth quarter production that exceeded expectations and announced a 2024 capital and operating plan that prioritizes capital efficiency and free cash flow generation over growth," stated Travis Stice.  "The decision to reduce our return of capital to stockholders reflects our Board's desire to increase financial flexibility and pay down debt added through this combination.  Our near-term objective is to reduce pro forma net debt below $10 billion very quickly, ensuring balance sheet strength and best-in-class credit quality.  Return of capital to stockholders will always remain a core tenet of our value proposition and capital allocation philosophy at Diamondback."

**2024 Endeavor Stand-alone Guidance**

Endeavor is providing stand-alone 2024 capital and operating guidance while the two companies work to close the merger.

- Expected 2024 oil production of 190 – 200 MBO/d (350 – 365 MBOE/d)
- Total 2024 capital budget of approximately $2.5 - $2.6 billion

Full pro forma guidance will be released by Diamondback after closing of the transaction.

**2025 Pro Forma Outlook**

Diamondback expects operational synergies to be realized in 2025 by the combined company. Therefore, the Company is providing a preliminary look at its pro forma 2025 combined company capital and operating plan assuming Diamondback's cost structure and current estimated well costs. The 2025 plan is preliminary and subject to changes, including as result of changes in oil and gas prices, the macro environment and well costs.

- On a pro forma basis in 2025, Diamondback expects to generate oil production of 470 – 480 MBO/d (800 – 825 MBOE/d) with a capital budget of approximately $4.1 - $4.4 billion
- This operating plan implies significant pro forma cash flow and free cash flow per share accretion

**Pro Forma Governance Highlights**

The combined company will continue to be headquartered in Midland, Texas. Upon closing, Diamondback's Board of Directors will expand to 13 members and Charles Meloy and Lance Robertson, together with two other individuals mutually agreed upon by Diamondback and Endeavor, will be added to the Board of Directors.

At closing, Diamondback will enter into a stockholders agreement with the former equity holders of Endeavor. Under that agreement the former Endeavor equity holders will be subject to certain standstill, voting and transfer restrictions and will be provided with certain director nominations rights and customary registration rights with respect to the shares of Diamondback common stock issued to them as transaction consideration.

Additional details regarding the stockholders agreement will be provided in Diamondback's filings with the Securities and Exchange Commission.

**Timing and Approvals**

Diamondback expects the merger to close in the fourth quarter of 2024, subject to the satisfaction of customary closing conditions, including termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and approval of the transaction by the Company's stockholders. The transaction is not subject to a financing contingency.

**Advisors**

Jefferies LLC is serving as lead financial advisor to Diamondback and Citi is serving as M&A and Capital Markets advisor to Diamondback.  Citi is the sole provider of committed bridge financing, as well as leading the term loan issuances and senior notes offerings.  Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Diamondback.

J.P. Morgan Securities LLC is acting as exclusive financial advisor to Endeavor, Goldman Sachs & Co. LLC provided corporate advisory services and Paul, Weiss, Rifkind, Wharton & Garrison LLP and Vinson & Elkins LLP are acting as legal advisors to Endeavor.

**The Materially Incomplete and Misleading Proxy Statement**

22. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on March 29, 2024.  The Proxy Statement, which recommends that Diamondback stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) Diamondback management's financial forecasts for Diamondback and Endeavor; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Jefferies LLC ("Jefferies"); and (c) potential conflicts of interest faced by Jefferies and Diamondback's M&A and Capital Markets advisor, Citigroup Global Markets Inc. ("Citi").

*Material Misrepresentations and/or Omissions Concerning the Company's and Endeavor's Financial Forecasts*

23. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, as well as those for Endeavor.

24. With respect to the Company, the Proxy Statement fails to disclose the estimates of tax savings relied upon by Jefferies for its financial analyses.[5]

---

[5] *See* Proxy Statement at 51stating that, in connection with its fairness opinion, Jefferies

25. The Proxy Statement also fails to disclose the line items underlying projected Operating Cash Flows and Unlevered Free Cash Flow with respect to the Diamondback forecasts for both the Company and Endeavor

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Jefferies*

26. The Proxy Statement fails to disclose material information concerning the financial analyses prepared by Jefferies

27. As to the *Discounted Cash Flow Analysis* of Endeavor performed by Jefferies, the Proxy Statement fails to disclose Endeavor's terminal values.

28. As to the *Net Asset Value Analysis* of Endeavor performed by Jefferies, the Proxy Statement fails to disclose: (a) the unlevered, asset-level free cash flows that Endeavor could be expected to generate from existing proved developed reserves, development plans for proved undeveloped reserves and development of additional undeveloped reserves used in the analysis; (b) non-drilling and completion capital expenses, general and administrative expenses and cash taxes payable by Endeavor; and (c) the adjustment for mark-to-market commodity hedges.

29. As to the *Comparable Public Company Analysis* of Endeavor performed by Jefferies, the Proxy Statement fails to disclose the respective multiples and financial metrics of each company.

30. As to the *Precedent Transaction Analysis* of Endeavor performed by Jefferies,

---

"reviewed certain estimates of tax benefits resulting from the Merger and Diamondback's ability to utilize those tax benefits to achieve future tax savings that, in each case, were prepared by, or at the direction of Diamondback management, and approved for Jefferies' use by the Board[.]"

the Proxy Statement fails to disclose the respective multiples for each transaction.

31.     As to the *Discounted Cash Flow Analysis* of Diamondback performed by Jefferies, , the Proxy Statement fails to disclose both the Company's terminal values, as well as its total net debt used in the analysis.

32.     As to the *Net Asset Value Analysis* of Diamondback performed by Jefferies, the Proxy Statement fails to disclose: (a) the unlevered, asset-level free cash flows that Diamondback could be expected to generate from existing proved developed reserves, development plans for proved undeveloped reserves and development of additional undeveloped reserves used in the analysis; (b) general and administrative expenses and cash taxes payable by Diamondback; and (c) the adjustment for mark-to-market commodity hedges.

33.     As to the *Comparable Public Company Analysis* of Diamondback performed by Jefferies, the Proxy Statement fails to disclose the individual multiples and financial metrics of the companies observed.

*Material Misrepresentations and/or Omissions Concerning Jefferies' and Citi's Potential Conflicts of Interest*

34.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Jefferies, including whether the financial advisor has performed any services for Endeavor or its affiliates in the two years prior to rendering its fairness opinion and, if so, any fees received in connection with such services.

35.     The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's additional financial advisor, Citi, including the terms of Citi's engagement by the Company. Specifically, the Proxy Statement does not disclose: (a) the details of any compensation Citi received or expects to receive, in

connection with the Proposed Transaction, including with respect to the financing of the Proposed Transaction; and (b) the details of any services Citi has provided to the Company, Endeavor or their respective affiliates in the prior two years, and any related compensation received by Citi.

36.     The omission of the above-referenced information renders statements in the "Certain Diamondback Unaudited Forecasted Financial Information," Opinion of Diamondback's Financial Advisor," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

37.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Diamondback**

38.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Diamondback is liable as the issuer of these statements.

12

40. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

41. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

43. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

44. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Diamondback within

the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Diamondback and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

50. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange

Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  April 12, 2024                                              **LONG LAW, LLC**

By:  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*